Edwin H. Cooper
vs.
Ceco Manufacturing Company
} Law No. 82057.

November 20, 1930.

HAHN, J. After verdict for the plaintiff in the sum of $5,249.91, heard upon defendant's motion for a new trial, based upon the usual grounds.

The plaintiff claims that defendant engaged him to enter into negotiations with the R. C. A. and other allied corporations holding patents on radio tubes, for the purpose of obtaining from them for defendant a satisfactory license for the manufacture of radio tubes, and also agreed that the defendant would assist in such negotiations, and that, if such license was procured, the defendant would pay to plaintiff the sum of $5000 plus necessary expenses incurred in such negotiations.

The above contract was entered into between the plaintiff and Ely Egnetoff, treasurer of the defendant corporation. While Egnetoff's memory in relation to the details as testified to by the plaintiff was not entirely clear, taken as a whole it supports the contention of the plaintiff and added to the testimony of the plaintiff and Egnetoff are the probabilities which support plaintiff's position.

It appeared in evidence that certain large corporations, the R. C. A. and others, hereinafter referred to as the "holding companies," succeeded in obtaining many patents having to do with the manufacture of radio tubes, and thereafterwards the holding companies, being amongst the strongest, financially, in this country, proceeded to bring patent suits against various manufacturers of radio tubes who were not in their combination, and amongst such manufacturers was the defendant corporation. This state of affairs rendered it difficult for the defendant corporation to sell tubes which, even in the hands of the purchaser, might be the subject of infringement proceedings, and the testimony tends to show that it was very desirable, for numerous reasons, that the defendant corporation should obtain a license in order that it might manufacture and sell its tubes without fear of litigation either against itself or its customers. In order to obtain such license, none

having, previous to that time, been issued by the holding companies, the plaintiff claims he was retained, and it became necessary to make a contract with their representatives and bring to their attention the fact that the defendant desired a license. As to the form of license, the quantity of tubes which might be made thereunder and the amount to be paid under the terms of the proposed license contract, there was nothing definite in the minds of the officials of the defendant corporation.

Plaintiff proceeded to New York, visited the office of the R. C. A., one of the holding companies, and conferred with an official by the name of Angus. Defendant's officers knew that plaintiff was acquainted with officials of the R. C. A. and had previously done business with some of them. From that time on, it is fair to assume that knowledge of the desire of the defendant corporation for such license was in the hands of the corporations controlling the patents and was being considered by them. The evidence shows that the holding companies were considering the issuing of various licenses and all the details in relation thereto and that nothing which could be done by the defendant or the plaintiff at that time would hasten this determination. All that could be done at the time was done by the plaintiff in placing the matter of defendant's desire to have a license before the holding companies, who probably knew of the Ceco Manufacturing Company, its size and its probable needs in the way of a license. Thereafterwards a change took place in the personnel of the defendant corporation and Mr. Egnetoff left its employ, but, nevertheless, the matter was still before the holding companies and the plaintiff was ready to do what he could to assist. Later on officials of the defendant corporation proceeded to meet with certain officials of the holding companies, including Mr. Angus, and finally a license

satisfactory to the defendant corporation was granted to it. Although Mr. Angus in his deposition states that the efforts of the plaintiff were of little value in bringing about the result, it is quite clear that from the time plaintiff first spoke with Mr. Angus the matter was before his principals for consideration, and it is equally clear from Angus's testimony that the holding companies decided all facts in regard to the licenses, taking their own time in determining all the details thereof with little regard for the desires of those applying for licenses.

The various witnesses, other than those giving depositions, were before the jury and told their stories. They were examined and cross-examined at some length. The case had some peculiar characteristics. It is clear that officials of the defendant corporation might have seen Mr. Angus originally without the necessity of sending the plaintiff, but it probably occurred to them that, through his acquaintance with some of the officials, the contact through him would be of more weight and more likely to produce results than one by a member of the corporation having no acquaintance with officials who were to be approached. The testimony shows that later there was an effort on the part of the defendant to present to the holding companies and their representatives men of their acquaintance and of influence in the community. Just how effective the plaintiff's services were in obtaining the license it is difficult to determine, but if the defendant contracted with him, as the plaintiff says it did, and the jury believed it did, there is no ground upon which to set aside the verdict. That the contract was unusual, the sort of a contract which might seldom be made, must be considered in relation to the matters involved, particularly the tremendous financial strength of the holding companies. The defendant wanted and needed a license which, without question, it would never have

received had not the holding companies been approached in its behalf. Any representative who met with the officials of the holding companies could merely indicate that the defendant corporation desired a license and if he had acquaintance with some of the officials such request probably had more weight than a request by a stranger.

The verdict of the jury is supported by the evidence of the plaintiff, by the evidence of Egnetoff, and by the circumstances.

The verdict is for the amount agreed upon. It is not against the evidence or the weight thereof.

Motion for a new trial denied.

For plaintiff: Knauer & Fowler.

For defendant: Hinckley, Allen, Tillinghast, Phillips and Wheeler.